**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>George Leo Curran,<br><br>Defendant. | No. CR-06-227-PHX-EHC<br><br>**ORDER** |

This matter arises on Defendant's unopposed Motion to Seal Competency Report and Hearing. (docket # 12)  On April 28, 2006, the Court granted this motion in open court and stated that a written order would follow.  This is the order in support of the Court's oral ruling made on April 28, 2006.

**I. Background**

Defendant is charged with Hostage Taking in violation of 18 U.S.C. § 1203 and Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c). (docket # 1)  The charges are based on allegations that on February 23, 2006, Defendant entered a hearing room at the National Labor Relations Board ("NLRB") in Phoenix, Arizona and took nine individuals, including an NLRB judge, a private attorney and court reporter, hostage at gunpoint. (Id.)  After taking the hostages, Defendant demanded media attention and "ranted" and "yelled" that there was a government conspiracy against him and his wife in connection with the termination of her employment with the Transportation Security Administration.  He claimed he and his wife could not get any help from the state and federal governments. (Id.)  He allegedly threatened to kill

the hostages if his demands were not met. At approximately 10:23 p.m. on February 23, 2006 after several hours of negotiations, Defendant surrendered to the FBI and turned over two handguns and a folding lock-blade knife. (Id.)

On February 28, 2006, the Defendant, a non-lawyer, appeared before the undersigned with appointed counsel for a detention hearing. Based on the available information before it and Defendant's expressed desire to terminate his relationship with his attorneys and represent himself in a case wherein he faces the possibility of multiple life sentences if convicted, the undersigned referred Defendant to the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri, pursuant to 18 U.S.C. § 4241, for a psychiatric or psychological evaluation to determine whether Defendant suffers from a mental disease or defect that would render him incompetent to the extent that he is unable to understand the nature of the proceedings against him or assist properly in his own defense. (docket # 5) A written forensic mental health evaluation was prepared and issued by USMCFP on April 14, 2006. On April 27, 2006, defense counsel filed the pending Motion to Seal the Competency Report and Hearing.

**II. Motion to Seal Competency Hearing**

The press, media and public have a First Amendment right to access criminal trials. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) (recognizing the right for the first time and reversing an order closing a criminal trial because the First Amendment guarantees the right to attend trials and related proceedings); Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596 (1982) (statute mandating closed courtrooms when minors testify in criminal trials violates First Amendment right of access); Press-Enterprise Co. v. Superior Court of California (Press-Enterprise I), 464 U.S. 501 (1984) (blanket order closing juror voir dire and withholding transcripts violated First Amendment). However, "there is no right of access that attaches to all judicial proceedings, including criminal proceedings." Times Mirror Co. v. United States, 873 F.2d 1210, 1217 (9th Cir. 1989) (no common law right of access to search warrant materials because unsealing the documents would disrupt the pre-indictment criminal investigation); Kansas City Star v. Dorfman, 666 F.2d 1168 (8th Cir. 1981) (media not

- 2 -

entitled to wiretap applications, recordings and transcripts until such time as there is good cause for their disclosure).

Although the district court begins with a presumed right of access to court proceedings, the Supreme Court has articulated a two-part test, the "experience and logic" test, for determining whether a right of access attaches to a particular kind of hearing. Press-Enterprise Co. v. Superior Court of California (Press-Enterprise II), 478 U.S. 1 (1986) (order closing preliminary hearing violated First Amendment). The experience prong of the test concerns "whether the place and process have historically been open to the press and general public." Id. at 8. The second element considers whether "public access plays a significant positive role in the functioning of the particular process in question." Id. If a proceeding satisfies both parts of the test, a qualified First Amendment right of access arises that can be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 8-10. If a defendant asserts that his right to a fair trial will be jeopardized if the court proceeding is not closed to the public, the court shall close the proceeding only if it makes specific findings that: (1) there is a substantial probability that defendant's right to a fair trial will be prejudiced by publicity that closure could prevent; and (2) reasonable alternatives to closure cannot protect defendant's right to a fair trial. Press-Enterprise II, 478 U.S. at 14. Thus, the First Amendment's right of public access to court proceedings is qualified and may be overridden only when closure is essential to preserve higher values and is narrowly tailored to serve that interest.

### A. Application of "Experience and Logic" Test

The Court must apply the "experience and logic" test to determine whether the press and public have a right of access to mental competency hearings. Under the "experience" portion of the test, the Court must determine whether competency hearings "have historically been open to the press and general public." Press-Enterprise II, 478 U.S. at 8. The "experience" prong does not look to the practice of one specific jurisdiction, but rather "'to the experience in that *type* or *kind* of hearing throughout the United States,' not the experience in only one

jurisdiction." El Vocero De Puerto Rico v. Puerto Rico, 508 U.S. 147, 150 (1993) (quoting Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 323 (1st Cir. 1992) (emphasis in original)).

The Court's research has not uncovered any Ninth Circuit or other federal cases[1] specifically addressing whether mental competency hearings have been historically open to the public. However, the Supreme Court has applied the First Amendment right of access to criminal trials, Richmond Newspapers, Inc., 448 U.S. 555, the selection of jurors, Globe Newspaper Co., 457 U.S. 596, and preliminary hearings, Press-Enterprise II, 478 U.S. at 10. Additionally, the Arizona Supreme Court has found a constitutional right of the public to attend pretrial proceedings. Phoenix Newspapers, Inc. v. Superior Court in and for Maricopa County, 101 Ariz. 257, 418 P.2d 594 (1966). Significantly, several state courts have held that mental competency proceedings should be open to the public. Miami Herald Publishing Co. v. Chappell, 403 So.2d 1342 (Fla.Ct. App. 1981) (holding that the same reasoning that mandates open trials mandates open mental competency hearings and that a competency hearing may only be closed upon the appropriate showing); Society of Professional Journalists v. Bullock, 743 P.2d 1166 (Utah 1987) (finding qualified right of access to mental competency hearing). Cheyenne K. v. Superior Court of Tuolume County, 208 Cal. App. 3d 331, 256 Cal Rptr. 68 (Cal. Ct. App. 1989) (holding that the public has a right of access to a mental competency hearing for a minor charged with murder when the minor fails to establish a reasonable likelihood of substantial prejudice to her right to receive a fair and impartial trial); In re Times-World Corp., 25 Va.App. 405, 488 S.E.2d 677 (1997) (First Amendment of the U.S. and Virginia Constitutions grant a qualified right of access to criminal competency hearings and documents admitted into evidence therein where the trial court made no findings of fact in support of the closure); contra, People v. Atkins, 444 Mich. 737, 514 N.W.2d 148 (1994) (finding no qualified right of access to criminal mental competency report not admitted into

---

[1] In United States v. Timothy McVeigh, 918 F.Supp. 1452, 1466 (W.D. Okla. 1996), the district court acknowledged that "[t]here may be records sealed to protect the privacy interests of the defendants in custody, such as matters relating to physical and mental health."

evidence). Based on the foregoing, the Court finds that mental competency hearings have been, and are, historically open to the public absent specific findings of fact in support of closure.

The Court will next discuss the logic prong of the test which considers whether public access to mental competency hearings plays a particularly significant positive role in the actual functioning of the criminal adjudication process. Press-Enterprise II, 478 U.S. at 11. Undoubtedly, a mental competency hearing is an important and critical step in the criminal adjudicative process because during such a hearing a court determines whether the defendant is able to understand the nature of the proceedings against him and whether the defendant is mentally able to assist counsel in his defense. Such a hearing determines whether the criminal proceedings will progress toward trial or whether the proceedings will be stalled due to the defendant's lack of competence. The Supreme Court has noted that "[c]riminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility." Press-Enterprise II, 478 U.S. at 13. Permitting the public to attend criminal proceedings provides "'an outlet . . . for these understandable reactions and emotions.'" Id. (quoting Press-Enterprise I, 464 U.S. at 509). Similarly, permitting press, media, and public attendance at a mental competency hearing provides the public with the ability to witness and read about the criminal justice process and ensure that the criminal proceedings are conducted in an open, objective and fair manner.

In the high-profile case involving Timothy McVeigh and the 1995 bombing of the Murrah Federal Building in Oklahoma City resulting in the tragic loss of 168 lives, the trial judge entered an order setting forth the conditions under which documents would be sealed and the standards under which media and press challenges would be considered. United States v. Timothy McVeigh, 918 F.Supp. 1452 (W.D. Okla. 1996), affirmed in 119 F.3d 806 (10th Cir. 1997). In his written decision, Chief Judge Richard P. Matsch quoted Chief Justice Warren E. Burger's identification of the fundamental values served by publicity in the administration of criminal justice.

> The early history of open trials in part reflects the widespread acknowledgment, long before there were behavioral scientists, that public trials had significant community therapeutic value. Even without such experts to frame the concept in words, people sensed from experience and observation that, especially in the

> administration of criminal justice, the means used to achieve justice must have the support derived from public acceptance of both the process and its results.
>
> When a shocking crime occurs, a community reaction of outrage and public protest often follows. Thereafter, the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion. Without an awareness that society's responses to criminal conduct are underway, natural human reactions of outrage and protest are frustrated and may manifest themselves in some form of vengeful 'self-help,' as indeed they did regularly in the activities of vigilante 'committees' on our frontiers. 'The accusation and conviction or acquittal, as much perhaps as the execution of punishment, operat[e] to restore the imbalance which was created by the offense or public charge, to reaffirm the temporarily lost feeling of security and, perhaps, to satisfy that latent 'urge to punish.'
>
> Civilized societies withdraw both from the victim and the vigilante the enforcement of criminal laws, but they cannot erase from people's consciousness the fundamental, natural yearning to see justice done--or even the urge for retribution. The crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is 'done in a corner [or] in any covert manner.' It is not enough to say that results alone will satiate the natural community desire for 'satisfaction.' A result considered untoward may undermine public confidence, and where the trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted. To work effectively, it is important that society's criminal process 'satisfy the appearance of justice,' and the appearance of justice can best be provided by allowing people to observe it.

918 F. Supp. at 1456 (quoting <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 570-572, (1980)). The Court, therefore, concludes that the First Amendment right of access to criminal proceedings applies to mental competency hearings.

### B.  Whether the Competency Hearing Should be Sealed

The Court must next determine whether the Defendant's mental competency hearing should be closed in this case due to higher interests overriding the public's right to be present at, and read about, the criminal proceeding. The qualified First Amendment right of access to mental competency hearings can be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." <u>Press-Enterprise II</u>, 478 U.S. at 8-10. If a defendant asserts his right to a fair trial the trial court shall close the proceeding only if it makes specific findings that: (1) there is a substantial probability that defendant's right to a fair trial will be prejudiced by publicity that closure could

prevent; and (2) reasonable alternatives to closure cannot protect defendant's right to a fair trial. Press-Enterprise II, 478 U.S. at 14.

Defense counsel argues that Defendant's mental competency hearing should be closed to protect his client's right to privacy and right to a fair trial. The determination of a defendant's mental competency to undergo a detention hearing and ultimately stand trial is a legal decision to be made by the district court in the exercise of its sound discretion. United States v. Knohl, 379 F.2d 427, 434 (2d Cir. 1967). The decision involves a defendant's fundamental constitutional rights to due process of law, effective assistance of counsel and a fair trial. Pate v. Robinson, 383 U.S. 375, 378 (1966). The classic test of mental competency, as enunciated by the Supreme Court in Dusky v. United States, 362 U.S. 402 (1960), is: "whether (a defendant) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Id.

Analyzing the relevant factors in making a competency determination will require consideration of a defendant's diagnosis and treatment which are private medical matters. Individuals have a right to privacy in their medical information. Doe v. Delie, 257 F.3d 309, 315 (3rd Cir. 2001). Indeed, medical and psychological records are entitled to greater protections than other information. Delie, 257 F.3d at 315. No doubt, this is true due to the stigma attached to mental illness. An individual also has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). Clearly, the Defendant in this case has an significant interest in the privacy of his psychiatric report from USMCFP in Springfield and in other information pertaining to his mental health and preventing as much as possible the public disclosure of his mental health information.

The Court concludes that the Defendant's right to privacy, which includes his right to avoid the disclosure of his personal, psychiatric information, constitutes a "higher value" and that closure of the mental competency hearing is essential to protect that value. The closure of the mental competency hearing is narrowly tailored to protect Defendant's privacy. The

competency hearing is limited in nature and will focus predominantly on Defendant's mental health and his present ability to assist his counsel in his defense. Thus, the only effective means for limiting the public disclosure of this information is to seal the hearing itself and the tape and transcript of the hearing. The Court finds it significant that no alternatives have been suggested by counsel. Because the competency hearing is narrow in scope by definition, sealing the hearing is likewise narrowly tailored to protect Defendant's privacy interests. Thus, for example, the issue whether Defendant should remain detained and the facts and arguments warranting continued detention or release with conditions will not be sealed from public scrutiny but will be deferred to another day.

A public hearing on the merits of Defendant's competency also implicates Defendant's right to a fair trial. Pate, 383 U.S. at 378. The right to a trial by a fair and impartial jury is "the most fundamental of all freedoms." Estes v. Texas, 381 U.S. 532, 540 (1965). Judging by the amount of publicity this case has generated in the local media and press, there is a substantial probability that Defendant's right to a fair trial will be prejudiced by the publicity regarding his mental health that closure of the competency hearing could prevent. United States v. Hegge, 636 F.Supp. 119, 126 (E.D.Wash. 1986)(a post- Press-Enterprise II finding that the press' qualified right to attend a pretrial hearing must yield to defendant's right to a fair trial where publication of defendant's alleged misconduct would result in substantial probability that defendant's right to a fair trial would be compromised based on public interest in defendant) But see Westchester Rockland Newspapers, Inc. v. Leggett, 48 N.Y.2d 430, 399 N.E.2d 518 (1979)(a pre-Press-Enterprise II holding that a pretrial competency hearing should not be closed on a fair trial grounds). Prematurely disclosing information regarding Defendant's current mental health to the public at large could taint potential jurors who could form an opinion regarding Defendant and whether he should be held responsible for the allegations against him. As previously discussed, there are no reasonable alternatives to closure of the competency hearing to protect Defendant's right to a fair trial.

In accordance with the foregoing,

**IT IS ORDERED** that Defendant's Motion to Seal the Competency Hearing (docket # 12) is **GRANTED.**

**IT IS FURTHER ORDERED** that, having received no objection, Defendant's Motion to Seal the Competency Report (docket # 12) is **GRANTED.**

DATED this 2nd day of May, 2006.

*/s/ Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge